IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

SHAWNETTA D. HENDERSON,      )
                             )
        Plaintiff,           )
                             )
        v.                   )        NO. 13-3201
                             )
CAROLYN W. COLVIN,           )
Commissioner, Social Security )
Administration,              )
                             )
        Defendant.           )

OPINION

RICHARD MILLS, U.S. District Judge:

This is an action for judicial review of a final decision of the

Defendant, Commissioner of Social Security, in determining that Plaintiff

was no longer disabled as of April 1, 2010, under the Social Security Act.

Pending are Motions for Summary Judgment filed by both parties.

I. INTRODUCTION

On March 21, 2005, the Defendant found that Plaintiff Shawnetta

Henderson was disabled and had been so since August 1, 2002, due to

metastatic thyroid cancer.  On July 27, 2007, it was determined that her

disability continued.  In December 2009, her claim was again reviewed as part of the continuing disability review process and, on April 23, 2010, the Defendant determined that Plaintiff was no longer disabled due to medical improvement.  The Plaintiff's initial appeal was denied and she requested a hearing before an administrative law judge (ALJ), which was held by video on January 10, 2012.  The Plaintiff appeared pro se.

ALJ Diane Flebbe issued a written decision on April 2, 2012, affirming the cessation determination.  The Plaintiff obtained counsel and appealed. The Appeals Council declined the Plaintiff's request for review on May 29, 2013.  This appeal followed.

## II. ALJ's DECISION

The ALJ noted that the most recent favorable medical decision finding that Plaintiff was disabled is the decision dated March 21, 2005.  This is known as the "comparison point decision."  At the time of the comparison point decision, the Social Security Administration determined that Plaintiff was disabled due to thyroid cancer.

The ALJ found that through April 1, 2010, the Plaintiff did not

engage in substantial gainful activity as defined by 20 C.F.R. § 404.1594(f)(1). As of April 1, 2010, the Plaintiff's medically determinable impairments included hypothyroid and hypoparathyroid, hypertension, congestive heart failure, obstructive sleep apnea, asthma, obesity and diabetes mellitus with blurred vision. Since April 1, 2010, the Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Para. 404, Subpart P, Appendix 1 (Listing of Impairments). The ALJ found that medical improvement as defined by 20 C.F.R. § 404.1594(b)(1) occurred as of April 1, 2010.

The ALJ noted that as of April 1, 2010, the Plaintiff's thyroid cancer had decreased in medical severity to the point the Plaintiff had the residual functional capacity to perform a reduced amount of sedentary work. The Plaintiff's medical improvement was related to her ability to work because it resulted in an increase in her residual functional capacity. As of April 1, 2010, the Plaintiff had severe impairments that caused more than minimal limitations in her ability to perform basic work activities. The ALJ found

3

that based on the impairments present as of April 1, 2010, the Plaintiff had the residual functional capacity to perform sedentary work involving only occasional climbing of ramps or stairs; only occasional postural activities; no climbing of ladders, ropes or scaffolds; no hazards such as dangerous machinery and unprotected heights; and no concentrated exposure to extreme cold, fumes, odors, dust, gases or other environmental irritants.

The ALJ noted that as of April 1, 2010, the Plaintiff was unable to perform her past relevant work.  At the time, the Plaintiff was a younger individual.  The Plaintiff has a high school education and is able to communicate in English.  As of April 1, 2010, considering the Plaintiff's age, education, work experience and residual functional capacities based on the impairments present as of April 1, 2010, the Plaintiff was able to perform a significant number of jobs in the national economy.

The ALJ found that Plaintiff's disability ended as of April 1, 2010.

## III. DISCUSSION

The Plaintiff alleges the ALJ committed error in several respects.

4

First, the Plaintiff did not knowingly and intelligently waive her right to counsel.   Second, the ALJ did not adequately develop the record in considering the claim of an unrepresented individual.   Third, the ALJ's residual functional capacity analysis at Step 8 is flawed.

### A. Standard of review

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner.  See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010).  The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Yurt v. Colvin, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).  Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion."  Id. at 856-57.

A "continuing disability review" process is one that periodically evaluates whether a claimant's impairments still qualify the claimant for benefits.  See 20 C.F.R. § 404.1589; Johnson v. Apfel, 191 F.3d 770, 773 (7th Cir. 1999).  The eight step process in determining whether a person, disabled by administrative determination, has medically improved to the point of becoming no longer disabled is as follows:

(1) Is the claimant engaged in substantial gainful activity?  If so the claimant is not disabled; if not the inquiry moves to step 2;

(2) Does the claimant's impairment meet or medically equal one of Social Security's listed impairments?  If so, the claimant is still disabled; if not the inquiry moves to step 3;

(3) Has there been medical improvement?  If not, the disability continues; if so, the inquiry proceeds;

(4) Is the medical improvement related to an ability to work?  If not, the disability continues; if so, the inquiry continues;

(5) Does an exception to medical improvement apply?  If so, the disability ceases; if not, the inquiry proceeds;

6

(6) Does the claimant still suffer from severe impairments?  If not, the disability has ceased; if so the inquiry continues;

(7) Do the medically determined impairments prevent performance of past work?  If not, the disability ceases; if so, the inquiry continues;

(8) Do the impairments prevent the performance of other work which exists in significant numbers of the national economy which the claimant can still perform, given vocational factors of age, education, past work experience, and residual functional capacity?   If yes, the disability continues; if not, the disability ceases.  See 20 C.F.R. § 404.1594.

The Court's inquiry concerns the Plaintiff's condition at the time of the disability termination date, which was April 1, 2010.  See Johnson v. Apfel, 191 F.3d 770, 774 (7th Cir. 1999) ("[T]he ALJ will consider a claimant's condition at the time of the cessation determination, not at the time the appeal determination is being made.").  The analysis must end if an adjudicator such as the ALJ finds that the cessation determination was proper.  See id.

B. Right to counsel

7

A claimant has a statutory right to counsel at a disability hearing.  See 42 U.S.C. § 406(a)(1).  A claimant must be properly informed of the right, though she is entitled to waive the right of counsel.  See Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007).  "To ensure valid waivers, ALJs must explain to pro se complaints (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees."   Id. (internal quotation marks and citation omitted); see also Thompson v. Sullivan, 933 F.2d 581, 585-86 (7th Cir. 1991).  An ALJ's failure to obtain a valid waiver of counsel heightens her duty to develop the record.  See id.

ALJ Flebbe's inquiry regarding representation and waiver is as follows:

ALJ: You come today without a representative.  At least a couple of times in the past we sent you information about the right of representation.  Most recently that would have been along with your notice of hearing.  Do you remember getting that from us?
CLMT: Yes.  No one wanted to represent me.
ALJ: I'm sorry?
CLMT: I had a hard time finding people to represent me.
ALJ: Yeah, so you have tried to find representation?
CLMT: Yes.

8

ALJ: And you did not acquire any?
CLMT: No, I - - no one wanted to help me.  I was denied.
ALJ: Okay.
CLMT: I did - -
ALJ: So are you prepared to go forward today without a representative?
CLMT: Yeah, I believe so.

R. 37-38.  Subsequently, the following exchange took place:

> ALJ: We went over the - - about the right of representation and that you haven't had any success in obtaining counsel, and you're prepared to go forward today without.  Is that correct?
> CLMT: Yes.  I'm having a hard time.  No one wants to help me.  No one.
> ALJ: Well, then your choice is you can say that you don't want to hold the hearing at all and just rely on the previous decision or we can forward with the hearing.  I mean - -
> CLMT: No, I'm not going to allow - -
> ALJ: - - I have no power to, I have no power to order attorneys to take the case.
> CLMT: I can't just go off - -
> ALJ: If you look - -
> CLMT: - - the decision when it's - -
> ALJ: - - for one and there isn't one who wants to help you, I, I don't, I'm - -
> CLMT: I'm not going to go - -
> ALJ: So you want to go forward then?
> CLMT: Yes.  Because I'm not going to go that I'm not disabled because it's untrue.  It's not like - -
> ALJ: Okay.

R. 46.  The Plaintiff alleges that the notice regarding representation and

9

this cursory inquiry were insufficient to establish a valid waiver.   The Plaintiff claims she also should have been given an explanation of the right to counsel.  The ALJ should have ensured the Plaintiff understood the right and had done what could be done to obtain either free counsel or to explain fee payment possibilities and perhaps give her more time to secure counsel armed with appropriate information.

The Plaintiff stated that she wanted counsel but had not been able to obtain counsel.  The ALJ did not inquire which, if any, of the numerous legal aid agencies on the list given to her she may have tried to contact or the methods she used to try to obtain counsel. The Plaintiff alleges that the ALJ forced her into either accepting the denial of her claim or proceeding without an attorney.   Because the ALJ did not adequately cover these matters, the Plaintiff contends she did not knowingly or intelligently waiver her right to counsel.

The record shows that, consistent with statutory requirements, the Social Security Administration advised the Plaintiff on numerous occasions that she could obtain an attorney to help with her claim for disability

insurance benefits.  The Plaintiff was provided information which included a list of legal aid agencies who provided legal services to qualified claimants. The Defendant acknowledges that the ALJ did not explicitly discuss attorney fee payment structures with the Plaintiff during the hearing.

The Seventh Circuit has said that the ALJ is required to explain certain procedures regarding the right to counsel in order for a pro se claimant's waiver to be valid.  See Skinner, 478 F.3d at 841; Binion v. Shalala, 13 F.3d 243, 244 (7th Cir. 1994).  Here, the Plaintiff received paperwork from the Social Security Administration about the right to counsel and her potential options.  The ALJ confirmed that she received these materials.  However, the ALJ did not make any further inquiry.  The Plaintiff clearly stated that she would like to have counsel but could not obtain counsel–implying that a lack of funds was the reason.  At a minimum the ALJ should then have discussed with the Plaintiff "the possibility of free counsel or a contingency arrangement."  See Skinner, 478 F.3d at 841.  Because the ALJ made no such inquiry, the Court concludes she did not obtain a valid waiver of counsel.

"The ALJ's failure to obtain a valid waiver of counsel heightens [her] duty to develop the record." Id. Accordingly, the Defendant has the burden to show that the ALJ adequately developed the record. See id. at 842.

## B. Development of record

The ALJ must "probe[] the claimant for possible disabilities and uncover[] all of the relevant evidence." See Binion, 13 F.3d at 245. The ALJ is required to "scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts" when a claimant is unrepresented. See id. The difficulty is knowing when a record is complete because a claimant could always obtain another medical examination, seek the views of another consultant or wait a few months to see if the claimant's condition changes. See Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993). "How much is enough is a subject on which reasonable persons can differ." Id. at 457. The Plaintiff alleges that although the ALJ's medical staff gathered much medical evidence, ALJ Flebbe did not do enough here to adequately develop the record.

At the hearing, the Plaintiff mentioned a conversation she had with a lawyer who had not taken her case.  The lawyer advised the Plaintiff of the criteria for disability to discuss with her doctors and, when she did, the Plaintiff's doctor indicated she was disabled.  The Plaintiff alleges that, while the ALJ obtained medical records, there is nothing to suggest that any of the physicians of record were asked about any specific restrictions or limitations or disabilities, even though the context in which the Plaintiff told the ALJ about her conversation with the doctor concerned ALJ Flebbe's remarks that no doctors had placed any specific limitations on her activity.  The Plaintiff also told the ALJ that she had advised her claims adjudicator of this (at the lower level of the administrative process) and she thought they had requested the appropriate records.  Although the ALJ is authorized to send requests to treating physicians for such reports, no statements were requested.  At the hearing, the Plaintiff expressed surprise that no such statements were in the record.

The Defendant notes that the hearing transcript shows that the ALJ discussed the proceedings with the Plaintiff so that she understood what

13

was happening and the type of medical evidence that was relevant.  The ALJ asked questions of the Plaintiff to ensure that the Agency had obtained all of the relevant medical evidence.  When the Plaintiff suggested there were gaps in the medical records, the ALJ discussed the medical evidence with the Plaintiff and asked specific questions to ensure that the Agency could request any missing documentation.  The ALJ summarized the requests that the Agency sent to the Plaintiff's various medical providers and the responses received thereto.  The Plaintiff claimed that some of medical records were missing from the file.  The ALJ noted that some of the documents she believed to be missing were relevant to her 2005 application for disability benefits, which was granted and no longer relevant to her current cessation of disability hearing.  The ALJ explained that the focus was on how the Plaintiff was doing as of April 2010.  The ALJ inquired as to whether any documents were missing dated 2009 through the present.  The Plaintiff claimed that several records from Memorial Medical Center and St. John's Hospital were missing.  The ALJ discussed the medical records in the file with the Plaintiff and determined that almost all of the

14

records had been obtained by the Agency.

The Plaintiff maintained that records were missing from three sources: Loyola Hospital, the SIU Clinic and Capital Community Health Center. The ALJ noted that SIU indicated they had not treated the Plaintiff since 2010, though she told the Plaintiff the Agency would submit an additional request for any records dated 2009 through the present.  The ALJ also told the Plaintiff that the Agency would submit a request for documents from Loyola, which were not in the record.  When the Plaintiff also stated that she had last visited Capital Community Health Center in December 2011. the ALJ told her that the Agency would request any records from Capitol since 2011.  The Plaintiff stated she understood that the Agency could only request records from medical providers identified by the Plaintiff.  The ALJ also explained that the Agency would request the allegedly missing medical records, though there was nothing it could do if the medical providers responded that no such records existed.  The Plaintiff stated that she understood.

The Agency did request the additional records identified by the

Plaintiff.  The day after the Plaintiff's administrative hearing, the Agency sent requests for medical records to SIU Healthcare and Capitol Community Health Center, both of which sent medical records in response to the requests.  Moreover, Loyola University Medical Center sent both inpatient and outpatient records from 2011.

The Plaintiff claims that, following the hearing, the ALJ's staff only requested office treatment notes, not requests for a statement from any treating physician.  The Plaintiff contends that this violated the ALJ's duty to develop the record, particularly given that the ALJ relied on the lack of a medical source statement supporting the claim as a reason to deny it:

> There is an absence of medical opinions specifically addressing the impact of the claimant's obesity on her other impairments and any attendant functional abilities.  Although, it is clear that the claimant's medical providers are concerned about the claimant's weight as she has been advised to lose weight. Absent such medical opinion, the undersigned finds the claimant's obesity clearly has an impact on her functionality, but does not impact this functionality beyond the residual functional capacity assessment set forth above. . .  The undersigned notes there are no treatment provider opinions or medical source statements limiting the claimant's functioning . . . It is noted however that the claimant has at times when seen for medical treatment or follow up reported attending school and even engaging in work.  Nothing in the medical

16

record reflects that any medical provider found such activities contraindicated.

R. 27.  Because the ALJ relied on the absence of medical source statements and records in deciding that Plaintiff's disability had ended, the Plaintiff contends that the ALJ failed to fully develop the record when she did not request that the medical providers complete simple forms or provide a narrative statement of the information she found lacking.

The Plaintiff alleges the ALJ failed to sufficiently inquire about her edema or the fact that she has been hyperthyroid and hyperparathyroid since her cancer surgery (removal of both glands).  Additionally, the Plaintiff is morbidly obese.  The Plaintiff notes that all of these conditions can be expected to affect edema or relate to edema and lower extremity pain.  Although many medical authorities recommend elevation of the legs above the level of the heart as an appropriate method to relieve edema, this was not included in either the assessed functional capacity or in the hypothetical questions posed to the vocational expert at the hearing.

To the extent the Plaintiff claims that one of her doctors at Capital Community Health Center told her she was disabled, the Defendant notes

that the ALJ requested all documents from Capital Community Health

Center from 2009 through the present and none of the documents support

the kind of functional limitations suggested by the Plaintiff.  Although the

Plaintiff suggests that the ALJ had a duty to specifically request a medical

opinion from a provider specifying the Plaintiff's functional limitations, the

Plaintiff did not disclose the physician by name or provide details of the

treating relationship.  The ALJ cited records from Capitol Community

Health Center multiple times in her written decision, but noted that these

records indicated mostly normal physical exams, mostly normal imaging

and diagnostic testing and noncompliance with medication and inhalers.

The record shows that the ALJ requested all medical records from the time

period noted by the Plaintiff in the administrative hearing and considered

those records in coming to her decision.

The Plaintiff has pointed to no authority suggesting that the ALJ was

required to do more than was done in this case.  There was evidence of the

Plaintiff's functional limitations and the ALJ tried to obtain any missing

information.  "Mere conjecture or speculation that additional evidence

18

might have been obtained in the case" is not enough.  See Binion, 13 F.3d at 246.  The ALJ considered a record of over 1,300 pages, nearly 1,000 pages of which consisted of medical records.  These included treatment notes, records of physical examinations, diagnostic and laboratory testing, records of a consultative examination by Vittal Chapa, M.D., and two medical source opinions by consultative physicians Virgilio Pilapil, M.D., and Charles Kenney, M.D.

Based on the volume of the record and given that the ALJ appears to have made efforts to obtain all of the records that existed, the ALJ had no obligation to continue to obtain another medical source opinion.  See Kendrick, 998 F.2d at 458.  The Court concludes that the ALJ acted reasonably to obtain more records.  The Plaintiff has not shown that records exist that would warrant a remand.  After obtaining the evidence that she discussed with the Plaintiff at the hearing, the ALJ proffered the evidence to the Plaintiff before adding it to the record.  The ALJ expressly advised the Plaintiff that she could review the records, submit written comments and a written statement, submit any additional records, submit

written questions–including questions to the authors of the records–and/or request a supplemental hearing to address the additional evidence. This procedure was also explained to the Plaintiff at the hearing. The letter specifically advised the Plaintiff that she could submit records from the treating physician. However, the Plaintiff did not avail herself of any of these remedies.

Based on the foregoing, the Court concludes that the ALJ adequately developed the record. Because the ALJ fully and fairly developed the record and the Plaintiff was not prejudiced by her lack of counsel, the Court concludes that a remand on that basis is not warranted.

### C. Residual functional capacity analysis

The ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) but is limited to work involving only occasional climbing of ramps or stairs and only occasional balancing, stooping, kneeling, crouching, or crawling. The claimant is limited to work involving no climbing of ladders, ropes or scaffolds. The claimant is limited to work involving no hazards such as

dangerous machinery and unprotected heights.  The claimant is limited to work involving no concentrated exposure to extreme cold, fumes, odors, dust, gases or other environmental irritants." R. 22.  The Plaintiff contends that the ALJ's residual functional capacity analysis is flawed because it did not account for all of the evidence of record as it must under 20 C.F.R. § 404.1545(a)(1).  Specifically, the Plaintiff asserts the ALJ did not include any restriction related specifically to the Plaintiff's edema.  Because the ALJ used the above residual functional capacity in a hypothetical question to the vocational expert, the Plaintiff alleges that the hypothetical question to the vocational expert did not include all of the necessary information.  The vocational expert must know the full extent of an applicant's limitations in order to declare what type of work she can perform.   See Young v. Barnhart, 362 F.3d 995, 1003 (7th Cir. 2004).

The Plaintiff alleges she provided the ALJ with enough information about her edema at the hearing that it should have triggered a basic inquiry about the nature and limiting effects of an impairment that ALJ Flebbe notes is referenced in the medical evidence by Social Security's own

21

consulting physician, Dr. Chapa, who saw the Plaintiff and declared she had 2+ edema at the very point when her disability allegedly ceased.  The Plaintiff testified that it was severe enough that she could not get up at times.  In August 2009, the Plaintiff had severe 3+ edema, which required diuresis in the hospital with significant fluid removal.

The Plaintiff also noted that swelling was a significant component of her continuing disability in written submissions.  Swelling was the major complaint in her "function report" forms.

To the extent more information was needed, the Plaintiff contends the ALJ should have developed the record and requested additional medical evaluations.   The Plaintiff contends that the failure to include a leg elevation requirement in either the assessed residual functional capacity or in the hypothetical question to the vocational expert is reversible error.

As the Defendant notes, the ALJ did consider a June 11, 2010 medical source opinion from state agency consultative physician Dr. Kenney, who found that Plaintiff had a 2+ edema in the legs, but opined that Plaintiff could perform a limited range of sedentary work.  The ALJ also considered

an April 22, 2011 medical source opinion of state agency consultant Dr. Pilapil, who reviewed the record and concluded that Plaintiff's consultative examination "was completely within normal limits with the exception of obesity, 2+ edema and blood pressure of 150/94." R. 25, 958-65. Dr. Pilapil opined that Plaintiff could perform a limited range of light exertional work. The ALJ rejected Dr. Pilapil's opinion, in giving the Plaintiff "the full benefit of the doubt in limiting her to sedentary exertional work as set forth above." R. 25.

The Defendant notes that there were two opinions from medical sources in the record, both of whom agreed that Plaintiff had 2+ edema in her legs at the time the opinions were rendered. The ALJ's residual functional capacity finding was more restrictive than one of the opinions and essentially equal to the other.

The ALJ specifically noted that Plaintiff testified she has edema in her legs and could only walk half a block. The ALJ considered the April 2010 consultative examination with Dr. Chapa, who found that Plaintiff had 2+ edema in her legs. The ALJ considered treatment notes post-dating the two

state agency medical consultant opinions, stating that Plaintiff was treated with medication following complaints of edema in the legs at medical appointments in April and May 2011.  The ALJ observed that, in May 2011, the Plaintiff's edema improved after her medication was increased. From August 2011 through December 2011, treating medical sources noted that either the Plaintiff had no edema in her legs or that Plaintiff's edema had been resolved with medication.  In one October 2011 treatment note, Dr. Hashim noted that Plaintiff was positive for edema but also was very confused and had been noncompliant with her medications.  The ALJ noted that, by December 2011, the Plaintiff's edema had resolved.  She was taken off her medication but told she could resume if the swelling returned.

Although the Plaintiff alleges her residual functional capacity should have included a need to elevate her legs because that is a common treatment for serious edema, the Court finds that the ALJ reasonably relied on Dr. Kenney's opinion that Plaintiff's edema left her with the ability to perform sedentary work without any requirement to elevate her legs.  The Plaintiff never testified she needed to elevate her legs.   The medical

evidence of record does not support the Plaintiff's assertion regarding the need to elevate her legs.  The record shows that, in assessing the Plaintiff's residual functional capacity, the ALJ considered the treatment notes related to the Plaintiff's edema, the medical source opinions by the state agency consultants and the April 2010 consultative examination with Dr. Chapa.  Based on all of this information, the ALJ concluded that the Plaintiff "is limited by . . . occasional edema."  As the Defendant notes, no doctor recommended that Plaintiff elevate her legs for edema and, in fact, the Plaintiff's treating doctors report that the edema had resolved by December 2011, the month before the administrative hearing took place.

For all of these reasons, the Court finds that Plaintiff's allegations regarding the need to elevate her legs due to edema are without support in the record.  The ALJ considered all of the relevant evidence related to the Plaintiff's edema.  The Court concludes that the ALJ's residual functional capacity finding is supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, the Court finds that although ALJ Flebbe did

not obtain a valid waiver of counsel, the ALJ adequately developed the record.  The Court further concludes that the ALJ's decision is supported by substantial evidence and, for that reason, the decision will be affirmed.

Ergo, the Plaintiff's Motion for Summary Judgment [d/e 10] is DENIED.

The Defendant's Motion for Summary Affirmance [d/e 13] is ALLOWED.

Pursuant to 42 U.S.C. § 405(g), the Clerk will enter a judgment affirming the decision of the Commissioner of Social Security.

ENTER: February 9, 2016

FOR THE COURT:

/s/ Richard Mills
Richard Mills
United States District Judge

26